KLITZKE, Respondent, vs. WEBB and others, Appellants.

*December 14, 1903—January 12, 1904.*

*Negligence: Personal injuries:* Res ipsa loquitur: *Presumptions: Re-buttal.*

1. In an action for injuries sustained by the falling over of a door, taken from its hinges by defendants' servants and placed on a platform against the building, evidence of plaintiff, in effect, that she was standing on the platform, that she did not touch the door, and that from some unexplained cause it fell upon and injured her, raises a presumption that the door was negli-gently placed in such a position that it was liable to fall over without assistance.

2. Such proof is sufficient, when plaintiff rests, to take the question of defendants' negligence to the jury.

3. In such case, such presumption is overcome by direct and positive proof that when the door was removed from its hinges and placed on the platform its base was placed against a row of nail heads in the platform eighteen inches distant from and parallel with the building, and that it leaned against the building with its top just under a gas pipe which ran along on the outside of the building.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries. The action was tried before a jury. The evidence showed that in and prior to June, 1902, the defendants were partners operating a grocery store at Reedsburg, Sauk county; that the store faced eastward on Walnut street, and that there was an alley running east and west along the south side thereof; that the main entrance to the store was on Walnut street, and that there was a rear entrance near the west end of the store opening on to the alley, and that along the north side of the alley, and next to the store, was a plank platform six feet in width and about twenty-seven inches in height, extending from Walnut street past the rear door aforesaid; that this platform was used for receiving farmers' produce and delivering goods to wagons, and sometimes for customers to pass in and out at their convenience; that the rear door aforesaid opening upon this platform swings inward, and that on busy days during the summer it was frequently removed from its hinges by the defendants' employees, and placed on the aforesaid platform just outside of and west of the doorway, and leaned up against the building; that the door was a pine door three and one half feet by seven feet in size, weighing sixty-eight pounds, and that the reason of the removal of the door from its hinges was that when open or swinging to and fro it hindered access to the elevator inside of the store; that on June 14, 1902, this door was taken from its hinges by one of the defendants' clerks and placed outside upon the platform leaning against the building at about ten o'clock a. m.,

the day being an ordinary summer day, with no unusual wind; that the plaintiff was a woman about seventy-seven years of age, and that on the last-named day, at about two o'clock p. m., she brought a box of eggs to the store to trade; that the eggs were unloaded in the alley upon the platform, and that she took them into the store through the rear door; that she sold the eggs, and purchased some groceries and other articles, and remained in the store until about five o'clock p. m., when she took the egg box and her umbrella and went out of the rear door and stood upon the platform, waiting for her son to come for her with the team and wagon; that while standing on the platform the door fell over on her, knocking her off from the platform, and inflicting personal injuries, for which this action is brought. The plaintiff denied having touched the door. A special verdict was returned as follows:

"(1) Did the defendants' employees place the door on the platform in such a position that the platform was a reasonably safe place for the plaintiff and other persons to be used by them as customers at defendants' store, as she did on the day in question? *Answer.* No. (2) Did the plaintiff, *Mrs. Klitzke,* take hold of the door with her hand, and thereby contribute to cause the door to tip over and cause the door to fall over on her? *A.* No. (3) If your answer to question number 1 is 'No,' was the injury to the plaintiff the natural and probable result of placing the door in the position in which you find it was on the day in question? *A.* Yes. (4) Ought the defendants, as men of ordinary intelligence and prudence, to have reasonably expected that an injury like the one the plaintiff suffered would probably result from their conduct in having the door placed as it was? *A.* Yes. (5) What sum do you find will compensate the plaintiff for the injuries she sustained? *A.* $400.00."

Upon this verdict judgment for the plaintiff was rendered, and the defendants appeal.

*G. Stevens,* for the appellants.

For the respondent there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans* and *H. H. Thomas.*

WINSLOW, J.   In order to show actionable negligence on the part of the defendants, the plaintiff relied solely on the doctrine of *res ipsa loquitur.*   She gave evidence to the effect that she was standing on the platform, that she did not touch the door, and that for some unexplained cause it fell upon her.   Doubtless this was sufficient evidence, in the first instance, to raise a presumption that the door was negligently placed upon the platform by the defendants' servants in such a position that it was liable to fall over without assistance, because, if securely and properly placed, it would not, in the ordinary course of events, fall over without some intervening or assisting cause.   This doctrine has been approved many times in this court, and is not open to question.   *Cummings v. National F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277, 71 N. W. 434; *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 75 N. W. 176.   The proof was sufficient, therefore, when the plaintiff rested her case, to take the question of defendants' negligence to the jury.   The defendants, however, met this presumption by direct and positive proof that when the door was removed from its hinges on the morning of the accident and placed outside upon the platform its base was placed against a row of nail heads in the platform eighteen inches distant from and parallel with the building, and that it was leaned up against the building with its top just under a gas pipe which ran along on the outside of the building.   This evidence was specific and uncontradicted.   It is matter of common knowledge that a door of the size and weight of the door in question, when placed in such a position under ordinary conditions, such as were present here, will not fall out-

wards without assistance. The laws of gravitation forbid. Hence, when this proof came in, and was undisputed, the presumption of negligence from the mere happening of the accident was entirely overthrown, and nothing was left for the consideration of the jury. This principle also has been frequently declared, and is well established. *Spaulding v. C. & N. W. R. Co.* 33 Wis. 582; *Vorbrich v. Geuder & P. Mfg. Co. supra,* and cases cited. It follows that the defendants' motion to set aside the verdict and for a new trial should have been granted.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

SIEBECKER, J., took no part.