SENFT, by Guardian *ad litem,* Appellant, vs. ED. SCHUSTER & COMPANY, Respondent.

*April 8—May 13, 1947.*

For the appellant there was a brief by *Gauer & Buer* of Milwaukee, and oral argument by *Robert J. Buer.*

*Raymond J. Moore* of Milwaukee, for the respondent.

BARLOW, J. The first question raised by counsel for appellant is whether the granting of a motion for judgment notwithstanding the verdict was proper practice where taking the verdict at its face the judgment in this case should go the other way.

This court has said that a court may grant judgment notwithstanding the verdict without changing any of the answers or without a motion to set aside the verdict because it is not supported by the evidence, though the strictly proper practice would be to change the answers in the verdict so that on its face it forms a basis for judgment, or to set the verdict aside because it is not supported by the evidence. *Sloan v. Chicago, M. & St. P. R. Co.* (1913) 151 Wis. 645, 139 N. W. 529; *Shumway v. Milwaukee Athletic Club* (1945), 247 Wis. 393, 20 N. W. (2d) 123.

In answering the questions in the special verdict the jury found that the plaintiff was injured by a sudden and unusual jolt or jerk of the elevator, the efficient cause of such injury being the negligence of the operator of the elevator. The court in effect set aside this verdict and the question is whether there is any credible evidence in the record to support the findings of the jury. *Henry v. La Grou* (1929), 200 Wis. 110, 227 N. W. 246. This requires an examination of the evidence.

August 28, 1944, about 1 o'clock in the afternoon, the four-and-one-half-year old plaintiff-appellant, Paul Senft, accompanied by his mother and grandmother, entered elevator No. 4 of the south-side store of defendant-respondent, Ed. Schuster & Company, Inc., in the city of Milwaukee. Plaintiff's mother and grandmother testified that somewhere between the basement and two feet from the level of the first floor the elevator gave a severe jolt or jerk, causing appellant to be thrown

from the rear of the elevator toward the door, falling on his face on the floor of the elevator. He sustained a laceration over his left eye and a gash to the back of his head. Neither the mother nor the grandmother was unbalanced by reason of the unusual jolt or jerk of the elevator.

Under the doctrine of *res ipsa loquitur* the proof was sufficient, when plaintiff rested his case, to take the question of defendant's negligence to the jury unless the defendant met the presumption by direct and positive proof that it was physically impossible to jerk or jolt the elevator or other positive proof overcoming the presumption. *Klitzke v. Webb* (1904), 120 Wis. 254, 97 N. W. 901; *Cummings v. National Furnace Co.* (1884) 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Vorbrich v. Geuder & Paeschke Mfg. Co.* (1897) 96 Wis. 277, 71 N. W. 434; *Carroll v. Chicago, B. & N. R. Co.* (1898) 99 Wis. 399, 75 N. W. 176.

Undisputed proof that the elevator was free from all discoverable defects, either in construction or repair, effectively overcomes any inference or presumption arising from the happening of the accident so as to leave no question in that regard for the jury. *Davis v. Wendlandt* (1933), 210 Wis. 322, 246 N. W. 320; *Groth v. Thomann* (1901), 110 Wis. 488, 86 N. W. 178; *Klitzke v. Webb, supra.*

As a witness for the defendant, the operator of the elevator testified that she had operated an elevator for six months; that the elevator did not jolt or jerk at the time the boy fell, and that it cannot be jerked, but admitted on cross-examination that on an adverse examination before trial she testified the elevator could be stopped very suddenly and short, and that it was possible to jerk it up and down.

Eugene Rewolinski, electrician for defendant's store, testified he inspected the elevator and ran the same before and after the accident occurred and that there was nothing wrong with its operation. After the operator turns on the power she has

no further control over the elevator and that it is impossible to stop the elevator with a jolt or jerk because of the automatic control.

The testimony of Benjamin M. Burkhart, construction and service superintendent of the Houton Elevator Company, who manufactured this elevator, testified that this particular elevator is equipped with safety governors, has an electric brake and governor control for speed and capacity; that it is operated by a switch which turns on the power and causes the elevator to go down when turned toward the door and to go up when turned away from the door. When the switch is straight up and down the power is turned off. To bring the elevator to a stop the switch is turned straight up and down and the car stops automatically and normally and cannot be jerked or jolted. It automatically starts out in a low speed and gradually goes to high speed. It cannot be stopped any quicker than the machine automatically stops when the power is shut off by turning the switch straight up and down. He further testified that the operator can move the car about one eighth of an inch by moving the car switch one sixteenth of an inch. The car can be stopped anywhere in its progress by turning the switch straight up and down.

Charles Billeness, superintendent of defendant's store, testified that on the day in question the particular elevator was inspected and there was nothing mechanically wrong with it; that the elevator was equipped with a governor; that it cannot be started or stopped with a jerk as it is mechanically operated and the operator does not have any control over the same; that if the braking equipment is suddenly jerked it will have no effect on the speed of the elevator, as the operator only turns the switch on and off, which automatically starts and stops the elevator. He further testified the operator has no control over the speed or power of the elevator and that she cannot start or stop it with a jerk.

Appellant relies on the case of *Dehmel v. Smith* (1930), 200 Wis. 292, 296, 227 N. W. 274, to sustain the verdict. The case is readily distinguishable. There the plaintiff was injured in an elevator in the Pfister Hotel, claiming there was a sudden drop of the elevator below the first floor. The expert called to testify as to the operation of the elevator described the manner of operation and then said he did not think the operator could very well cause the unusual movement of the car, which the court said was "far short of saying that he could not cause it," and thus presented a question of fact for the jury. Here we have the positive testimony of three experts that it was mechanically impossible for the elevator to jolt or jerk as testified to by witnesses for the plaintiff. The testimony of the operator on adverse examination that it could be jerked up and down is explainable by the fact that the elevator can be "inched" up and down at the floor level as explained by one of the witnesses, but this is far from the type of jerk that plaintiff's witnesses testified was the cause of the injury.

Plaintiff offered no evidence to refute the testimony of the expert witnesses of the defendant, but relies on the testimony of the operator of the elevator that she could jerk or jolt it to raise an issue of fact for the jury on the question of negligence in the operation of the elevator. The witness did not testify that she had any knowledge of the operating mechanism of the elevator, nor did she attempt to demonstrate how it was possible to jerk or jolt it. She testified on direct examination at the trial that the elevator could not be jerked or jolted, and as a witness at a preliminary examination testified that it could be jerked and jolted. It is considered this is not sufficient to make a jury issue of whether the elevator was negligently operated as against the positive testimony of defendant's experts. Conclusive proof of a mechanical impossibility that the accident could have happened in the manner testified to by plaintiff's witnesses warrants taking the case from the jury. *Mickuc-*

*zauski v. Helmholz Mitten Co.* (1912) 148 Wis. 153, 163, 134 N. W. 369.

Appellant's counsel stated during the trial that no claim is made relative to any defective condition of the mechanism of the elevator so far as an inspection is concerned, and the evidence clearly shows there was no defective condition of the mechanism. Thus the only question is whether the operator of the elevator was negligent. It is considered that the defendant met this presumption with conclusive proof and that the trial court properly dismissed plaintiff's complaint.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.