Brusberg vs. The Milwaukee, Lake Shore & Western R'y Co.

question. The want of jurisdiction in the circuit court to enter the order of imprisonment was the *vital* question upon which the jurisdiction of this court to entertain the proceedings in *habeas corpus* and to discharge the prisoner depended; and in that case the want of jurisdiction in the circuit court consisted in making the *wrong* order, when the statute clearly provides for *another* order, or in making an order applicable both to proceedings to enforce a civil remedy and proceedings to impose criminal punishment. The defect is stated in the opinion as follows: "Hence, the final order in contempt proceedings must be one thing or the other; it must impose criminal punishment for the misconduct, or enforce the civil remedy by awarding indemnity. *It cannot do both.*" That was a very weak case of a want of jurisdiction, and yet we held that it came within the rule resolving all doubts in favor of the prisoner. In that case the court had jurisdiction to make *an* order — the order required by the statute in such a case,— but made the *wrong* order, and one not within the statute. In this case the court had no jurisdiction to render any judgment whatever. It is very easy to see which is the clearer and stronger case of a want of jurisdiction.

*By the Court.* — Judgments reversed, and causes remanded to the circuit court for further proceedings in accordance with the opinion of this court.

BRUSBERG vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

*September 21 — October 12, 1880.*

*Railroads: Court and Jury.*

In an action against a railway company for the value of property destroyed by fire alleged to have been caused by its negligence in running a train, it appeared that the train was running within a village at an unlawful

rate of speed, viz., at a greater rate than six miles per hour (R. S., secs. 1809, 4393); and that the train consisted of only two cars, and was running on a straight line; and the grade was not shown. There was no other evidence that the undue speed increased the danger of fire. *Held*, that it was error, as against defendant, to submit that question to the jury.

APPEAL from the Circuit Court for *Outagamie* County.

Action to recover the value of certain buildings belonging to the plaintiff, situated in the village of New London, contiguous to the railway track of the defendant company, and of certain personal property of the plaintiff stored in such buildings, all of which were destroyed by fire in January, 1879. It is alleged in the complaint that the fire was communicated to the buildings from a passing locomotive on the defendant's railway, which locomotive was being run by the defendant's employees "in a reckless, negligent, careless and unlawful manner;" also that such locomotive was not equipped with a sufficient spark-catcher, screen, or device to prevent the escape of fire therefrom. It is further alleged that such negligent management and imperfect construction of the locomotive caused the burning of plaintiff's property. These allegations are denied by the answer. The evidence and rulings of the court on the trial are stated in the opinion. Plaintiff recovered, and defendant appealed from the judgment.

For the appellant there was a brief by *Cottrill, Cary & Hanson*, and oral argument by *Mr. Cottrill*.

The cause was submitted for the respondent on briefs of *Geo. W. Burnell*.

LYON, J. The evidence proves conclusively that the locomotive from which the fire that consumed the plaintiff's property is alleged to have been communicated, was in good order and repair, and was provided with all reasonable appliances to prevent the escape of fire therefrom. The learned circuit judge so instructed the jury. The evidence also tends to prove that such locomotive was run past the plaintiff's buildings at

a greater rate of speed than six miles an hour, a short time before the fire was discovered, and that it had not then passed all of the traveled streets in the village of New London. See R. S., secs. 1809 and 4393. On these propositions of fact there was conflicting testimony, and they were properly submitted to the jury for determination. The question whether or not the locomotive was run and operated in a careful and prudent manner, was also submitted to the jury. The judge further instructed the jury as follows: "If you find from the evidence that the buildings were set on fire by sparks or fire from the locomotive of the defendant, and that the defendant was running its train faster than six miles an hour, such running was unlawful, and was negligence on the part of the defendant; and if such negligence occasioned the fire which consumed the plaintiff's buildings and property — if the loss was occasioned thereby,— then the plaintiff is entitled to recover in this action, unless you find from the evidence that under the circumstances there was negligence on the part of the plaintiff in the care and management of his property at the time the loss occurred, which contributed to the loss."

Under this instruction the jury may have found that in every particular, except rate of speed, the locomotive was operated prudently and carefully, and that the fire was caused solely by the unlawful rate of speed at which it was run. Yet the record has been searched in vain for any testimony tending to show that such excess of speed ·above the rate prescribed by law increased the danger of communicating fire to the plaintiff's buildings. There may be circumstances in a case of this nature which would raise a presumption that a locomotive running at a high rate of speed would emit more fire and send it a greater distance, and thus more endanger the destruction of adjacent combustible property, than it would were it running at a less rate of speed; as, for example, if it were attached to a heavy train of cars and starting up a steep grade. In such a case we suppose the heavier working of the locomotive engine

might cause it to throw off more fire. On the other hand, we suppose that, with a light train and an easy road, a high rate of speed may be attained without materially increasing the discharge of fire. In this case it appears that the train to which the locomotive in question was attached consisted of but two cars, and that the railway was on a straight line from the depot from which the train started to where it passed plaintiff's premises — about one-half mile distant,— and beyond. The grade does not appear. No inference can be drawn from the above facts that the locomotive discharged more fire than it would have discharged had it been run at a lawful rate of speed, or that the excess of speed caused the destruction of plaintiff's property.

The case of *Martin v. The W. U. R. R. Co.*, 23 Wis., 437, which is relied upon by counsel for plaintiff to sustain this judgment, resembles this case in some of its features, while in others it is very different. In that case, as in this, the rate of speed of the train was a controverted fact determined by the jury. But on the question which now concerns us, as to whether the fire was caused by excess of speed, there was really no controversy. It was practically conceded by counsel for the defendant that if there was excess of speed it was the cause of the fire. An examination of the record in that case shows that the concession was not unadvisedly made. The testimony shows that the locomotive started from the depot near the scene of the fire on an up grade, drawing a heavy freight train; that it ran upon a curve and labored heavily; and that, under those circumstances, it discharged more fire than it would have discharged had its rate of speed been less. This case fails to disclose any such state of facts, or any facts which authorized the jury to find that the cause of the burning of plaintiff's property was the unlawful speed of the train. Hence it was error to submit that question to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.